NORA M. HINSON v. NATIONAL STARCH & CHEMICAL CORPORATION

No. 8919SC776

(Filed 19 June 1990)

**Negligence § 30.2 (NCI3d) — respiratory impairment — acidic cloud from defendant's plant — plaintiff's smoking — insufficiency of evidence of causation**

The trial court properly directed verdict for defendant where the evidence, including testimony by plaintiff's medical expert, raised no more than speculation as to whether plaintiff's exposure to acetic acid released by defendant's plant caused plaintiff's respiratory impairment, or whether the exposure combined with plaintiff's cigarette smoking and occupational cotton dust exposure to cause the impairment.

**Am Jur 2d, Negligence §§ 459, 463, 531.**

APPEAL by plaintiff from order entered 23 February 1989 by *Judge W. Douglas Albright* in ROWAN County Superior Court. Heard in the Court of Appeals 18 January 1990.

*J. Stephen Gray for plaintiff-appellant.*

*Hedrick, Eatman, Gardner & Kincheloe, by Mark C. Kurdys, for defendant-appellee.*

GREENE, Judge.

Plaintiff appeals the trial court's entry of directed verdict for defendant.

The record shows that plaintiff was a fifty-year-old employee of a warehouse located near a chemical processing and production plant, which defendant owned. Defendant is a Delaware corporation. Plaintiff filed a complaint alleging that on 16 August 1984, plaintiff was eating lunch outside her employer's business when defendant's plant negligently released a cloud of vapor into the

air which drifted over plaintiff and which she inhaled. Defendant answered plaintiff's complaint, denying its allegations.

At trial, plaintiff offered evidence that defendant's negligence exposed her to acetic acid (or "vinegar acid"), a toxic chemical. Plaintiff offered medical evidence to show that after the exposure she was diagnosed as having some pulmonary impairment. Record evidence shows that plaintiff had smoked as much as two packs of cigarettes for approximately thirty years and had worked for approximately five years at a textile factory, where she was exposed to cotton dust. Plaintiff testified that she continued smoking for approximately four years after the date of defendant's alleged negligence. On the question of causation, plaintiff offered the testimony of Dr. Myron Goodman, an expert in the field of internal medicine, who testified in pertinent part:

### DIRECT EXAMINATION

Q. Dr. Goodman, do you have an opinion satisfactory to yourself as to whether the inhalation of a chemical could have caused bronchitis?

A. Could you repeat that again?

Q. Do you have an opinion satisfactory to yourself, sir, as to whether the inhalation by Ms. Hinson in 1984 could have or might have caused some bronchitis, chemical bronchitis?

A. My feeling after examining her and reviewing the facts at hand, I can state, as I reported in my report, that this patient in my judgment definitely has respiratory impairment. She had symptoms after breathing in an odorous chemical as stated above in the history. *I would certainly say that it's possible that breathing in the chemical [on] the aforesaid date could have caused her to have the respiratory impairment.* I would also state that seeing her in person and listening to her description of symptoms was the most valid means for a report and the most helpful in the decision that impairment had been caused by chemicals as stated. *The inhaled chemical could have caused impairment.* It is extremely difficult to prove a situation like this, as stated above. There does exist respiratory impairment. The patient has inhaled an odorous chemical on above-stated date, and her description

as stated of the symptoms in my judgment is the most influential and accurate as far as determining impairment.

. . . .

Q. Do you feel that Ms. Hinson has any permanent impairment as far as limitations on her activities as to what she might be able to do, such as a job or something of that nature?

A. Yes, I think she does. *I cannot relate it to any specific etiology,* however, in all honesty.

Q. So you say then it would be hard to determine whether it was cigarettes *or* cotton dust or chemicals that would have caused this —

A. Yes.

. . . .

Q. When you next saw her after the initial time that you saw Ms. Hinson, I believe in October of 1986, would you describe what her condition was like at that time, sir?

. . . .

A. . . . So there was a — demonstrated by the pulmonary functions — a diminished pulmonary function, which I am satisfied with. Now, in all fairness — in all fairness — the patient did continue to smoke some. I don't think she had very much occupational exposure during that time. She did continue to smoke some. And I say there is a degree of decrease in pulmonary function there. *Now, whether that came from an inhaled chemical, I cannot say yes or no.*

. . . .

Q. Did you find, sir, in your examination that, in fact, there was anything inconsistent with an exposure to a chemical bronchitis or to chemicals that could have caused this problem?

A. No, I cannot say that.

. . . .

CROSS-EXAMINATION

Q. Now, you stated that you can't tell whether any respiratory impairment she had is related to her chemical inhalation or whether it's not related. Is that right?

HINSON v. NATIONAL STARCH & CHEMICAL CORP.

[99 N.C. App. 198 (1990)]

A. *I cannot say categorically, one way or the other.*

Emphases added.

At the close of plaintiff's presentation of evidence, defendant moved for directed verdict according to N.C.G.S. § 1A-1, Rule 50. The trial court granted defendant's motion, determining that plaintiff's evidence failed to establish a question of fact for the jury "on the requisite causal connection between Plaintiff's exposure to chemicals discharged by the Defendant's facility and Plaintiff's alleged respiratory impairment," considered in the light most favorable to plaintiff.

---

The sole issue is whether Dr. Goodman's testimony on causation is sufficient to take the case to the jury.

Because the parties do not raise the question, we do not address the admissibility of 'might or could' opinion evidence, which is a threshold question separate from the subsequent question of the sufficiency of such evidence. *See Cherry v. Harrell*, 84 N.C. App. 598, 603, 353 S.E.2d 433, 437, *review denied*, 320 N.C. 167, 358 S.E.2d 49 (1987).

The purpose of a motion for directed verdict is to test the legal sufficiency of the evidence to take the case to the jury. N.C.G.S. § 1A-1, Rule 50 (Cum. Supp. 1989); *McFetters v. McFetters*, 98 N.C. App. 187, 191, 390 S.E.2d 348, 350 (1990) (citation omitted). "In deciding the motion, the trial court must treat non-movant's evidence as true, considering the evidence in the light most favorable to non-movant, resolving all inconsistencies, contradictions and conflicts for non-movant, giving non-movant the benefit of all reasonable inferences drawn from the evidence." *Id.*, at 191, 390 S.E.2d at 350 (citation omitted). The case should not be submitted to the jury " 'merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character as that it would warrant the jury to proceed in finding a verdict in favor of the party introducing such evidence.' " *Lee v. Stephens*, 251 N.C. 429, 434, 111 S.E.2d 623, 627 (1959) (citation omitted) (expert medical testimony that it was possible that decedent's motor vehicle collision caused a cerebral hemorrhage presented no question of causation to the jury and was improperly submitted to the jury).

HINSON v. NATIONAL STARCH & CHEMICAL CORP.

[99 N.C. App. 198 (1990)]

"[P]ositive causation testimony ordinarily will settle the matter of sufficiency, provided it is not inherently incredible. Whether [either word] 'could or might' is sufficient depends upon the general state of the evidence." 1 Brandis on North Carolina Evidence § 137, n.38 (Cum. Supp. 1989) (citation omitted). To defeat a motion for directed verdict and take the question of causation to the jury, non-movant's evidence " 'must indicate a reasonable scientific probability that the stated cause produced the stated result. . . .' " *Cherry*, at 603, 353 S.E.2d at 437 (citation omitted). When "evidence raises a mere conjecture, surmise and speculation as to [causation]," it is insufficient to present a question of causation to the jury. *Maharis v. Weathers Bros. Moving & Storage Co.*, 257 N.C. 767, 768, 127 S.E.2d 548, 549 (1962) (witness who opined that rags "could have caused" a fire and "that it was 'possible that this fire could have happened from any one of a number of causes' " is insufficient to present a causation question for the jury).

Drawing every reasonable inference from the evidence and considering the evidence in the light most favorable to plaintiff, we determine that the 'general state of the evidence,' including Dr. Goodman's expert testimony, raises no more than a possibility that defendant's actions caused plaintiff's pulmonary impairment. Some degree of probability, however small, must exist to provide the jury with a question of causation to resolve. We find applicable our Supreme Court's analysis of the law and circumstances in the *Maharis* decision. The facts in evidence in *Maharis* are analogous to the facts as presented in this case, illustrating that Dr. Goodman's testimony raises nothing more than speculation as to whether plaintiff's exposure to acetic acid alone caused her respiratory impairment, or combined with her cigarette smoking and occupational cotton dust exposure to cause the impairment.

Affirmed.

Judges JOHNSON and PARKER concur.