The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gregory M. Willis. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. At the initial hearing, the parties submitted a Pre-Trial Agreement, and that document is incorporated by reference as though fully restated herein.
2. Since the time of the initial hearing, the parties have submitted the depositions of Dr. Douglas Metcalf, Dr. Hubert Bonfili, and Dr. Barry Seltzer which are hereby made a part of the record of this case, and all objections raised by counsel are hereby OVERRULED.
3. Plaintiff's average weekly wage would result in the maximum compensation rate for calendar year 1993.
4. Plaintiff has not worked for the defendant from 6 July 1993 and continuing through the date of the hearing.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the initial hearing, plaintiff was 38 years old, with a date of birth of 9 December 1955. For her education plaintiff had completed high school and one year in nursing at Forsyth Technical College, without earning any degree. Plaintiff began working for defendant in January 1976 as a temporary employee, and she became a permanent employee of the defendant in December 1976. In 1993 plaintiff's job with defendant was as a general plant attendant with duties which included cleaning and general labor.
2. While working for defendant plaintiff had an extensive medical history which is largely unrelated to back problems or fibromyalgia. However, the relevant aspects of her prior medical history before September 1992 includes the following: On 19 September 1984 plaintiff asked for medication because of stress at work. On 31 March 1989 plaintiff reported to her doctor a loss of energy and pressure in her abdomen which resulted in her being unable to do her job, unable to do housework, and unable to lift "anything." On 12 May 1989 plaintiff reported low back pain which radiated to both hips and legs. On 21 May 1991 plaintiff reported insomnia to her doctors and asked for medication to help her rest. At the examination in May 1991 plaintiff asked for the drug, Halcion, which she had used before; and plaintiff explained to her doctor "at length" that she was not "abusing the system" and she needed this medication. On 17 January 1992 plaintiff reported pain between her scapula which had begun after mopping. There are references in plaintiff's medical records to difficulty sleeping and resting. Lack of sleep is a substantial factor in developing fibromyalgia.
3. On 3 September 1992 plaintiff reported neck pain which had begun with no injury. At this time plaintiff told her doctor that she had taken the drug Flexeril in the past, but it made her drowsy. On 17 September 1992 plaintiff again reported requesting Halcion to help her sleep. The next day plaintiff reported sinus problems and chronic insomnia. On 9 October 1992 plaintiff reported neck pain and muscle spasms, and on 15 October 1992 plaintiff reported increased back and neck pain which was exacerbated by her job. Plaintiff reported mid and lower back pain in 28 October 1992. X-rays were taken in October 1992 of the neck and pain and where generally within normal limits. On 15 November 1992 plaintiff reported continued neck pain and asked for stronger medication. In November 1992 plaintiff also reported a ten pound weight loss which she attributed to stress following a separation from her husband. Plaintiff was referred to a neurosurgeon, and she did not relate any of these back problems to any specific incident at work.
4. Prior to the first examination by Dr. Charles Rawlings, a neurosurgeon, an MRI was performed of the thoracic and cervical spine. At the time of the MRI, there was a central-left disc herniation at spinal level C5-6, with no other abnormalities. Dr. Rawlings reviewed the MRI, and he ordered a myelogram/CT scan. Plaintiff told Dr. Rawlings that she was not taking any medications, although in the two weeks before the examination she had been taking Motrin, Indocin, and Robaxin, as well as Valium before the MRI.
5. Following the myelogram/CT scan plaintiff was admitted to Forsyth Memorial Hospital for surgery. Plaintiff again reported taking no medications. On 3 December 1992 Dr. Rawlings performed anterior cervical diskectomy and fusion at spinal level C5-6. Plaintiff recovered well from this surgery and was first released to return to work on 1 February 1993.
6. Plaintiff returned to work in April 1993. From April 1993 through 15 June 1993 plaintiff worked at light duty. On 15 June 1993 plaintiff was given a seminar on safety by her supervisor which included videotapes on how to lift. Plaintiff testified that she had no training in how to lift.
7. From 16 June 1993 through 1 July 1993 plaintiff performed the job as a general material handler. The duties of this job included pulling an air hose and moving bales of tobacco. The heavier bales of tobacco would be moved with a hoist. Plaintiff's last day at work was 1 July 1993. On this day plaintiff arrived at work just before 8:00 a.m. and was assigned to the break-down crew. For one and a half hours plaintiff removed plastic from bales of tobacco. Beginning at 9:30 a.m. plaintiff removed boards from hogs heads of tobacco for one and a half hours. From 11:00 a.m. to 1:00 p.m. plaintiff went to a company picnic which was given for the last day of work before the Fourth of July Holiday. From 1:00 p.m. to 3:00 p.m. plaintiff performed general cleaning in defendant's plant. From 3:00 p.m. to 4:00 p.m. plaintiff waited for a line of tobacco to start; and when it did not start, plaintiff went home. Plaintiff did not report any injury at work. That night she took muscle relaxers.
8. The next day (2 July 1993) plaintiff received medical treatment for mid-back and chest pain. Plaintiff did not report any specific injury, but did report that she needed an easier job at work. On 6 July 1993, the day after the Fourth of July Holiday, plaintiff reported to her supervisor that she would be unable to work because of back pain. Plaintiff has continued to receive medical treatment from 2 July 1993 through the date of the hearing.
9. Sometime after July 1993 plaintiff developed fibromyalgia or muscle pain. Regarding the cause of the fibromyalgia, this is a complicated medical situation because of plaintiff's history of back problems and chronic insomnia. Two of the three doctors who testified could not relate the cause of plaintiff's fibromyalgia to the one and a half hours she spent on 1 July 1993 taking apart hogs heads of tobacco. Dr. Metcalf was of the opinion that it was possible that taking apart the hogs heads could have caused plaintiff's development of fibromyalgia. Based on the above facts, the undersigned finds that there is insufficient evidence of record from which the undersigned can determine from its greater weight that the cause of plaintiff's fibromyalgia was plaintiff's taking apart hogs heads of tobacco on 1 July 1993.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSION OF LAW
Plaintiff has failed to prove that any specific traumatic incident at work caused an injury to her back. N.C. Gen. Stat. § 97-2 (6);Hinson v. National Starch and Chemical Corporation,99 N.C. App. 198 (1990); Glick v. Freight Carriers,41 N.C. App. 458 (1979).
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusion of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claim for compensation pursuant to the North Carolina Workers' Compensation Act must be, and the same is hereby, DENIED.
2. Each side shall bear its own costs, except that defendant shall pay, if not already paid, an expert witness fee of $250.00 to Dr. Metcalf, $200.00 to Dr. Bonfili and $200.00 to Dr. Seltzer.
 S/ _________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _________________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _________________________ THOMAS J. BOLCH COMMISSIONER