JUDY CAROLYN YOUNG, Employee, Plaintiff v. HICKORY BUSINESS FURNITURE, Employer, SELF-INSURED (ALEXSIS, INC. SERVICING AGENT), Defendants

No. COA99-524

(Filed 21 March 2000)

### 1. Workers' Compensation— consideration of testimony— authority to reject

There was no error in a workers' compensation proceeding where defendant contended that the Industrial Commission had not given weight to evidence or had failed to give proper weight to testimony. It was apparent from the Commission's findings of fact that it had considered the opinion testimony and the evidence and it was well within the Commission's authority to reject what it deemed to be unreliable evidence.

### 2. Workers' Compensation— fibromyalgia—related to workplace injury

The Industrial Commission did not err by finding and concluding that plaintiff's fibromyalgia was causally related to an earlier injury at work where defendant contended that the etiology of fibromyalgia cannot be scientifically or objectively determined, but plaintiff's doctor, who was an expert in the field of rheumatology and the treatment of fibromyalgia and was in a better position to draw a conclusion from the relevant circumstances, testified that plaintiff's injury could have or would have aggravated or caused the fibromyalgia and that her history did not reveal any other causative factor. His testimony was more than mere speculation and was sufficient to support the finding that plaintiff's fibromyalgia was caused by or was substantially aggravated by her accident.

### 3. Workers' Compensation— change of condition—disability rating unchanged

The Industrial Commission did not err in a workers' compensation action by concluding that plaintiff experienced a substantial change of condition where her disability rating did not change. The record contains ample evidence that her physical condition changed so as to impact her wage-earning capacity.

Judge HORTON dissenting.

**YOUNG v. HICKORY BUS. FURN.**

[137 N.C. App. 51 (2000)]

Appeal by defendants from opinion and award entered 28 January 1999 by the North Carolina Industrial Commission. Heard in the Court of Appeals 26 January 2000.

*Randy D. Duncan for plaintiff-appellee.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by J.A. Gardner, III, for defendants-appellants.*

TIMMONS-GOODSON, Judge.

Hickory Business Furniture ("defendant-employer") and its insurance servicing agent, Alexsis, Inc., (collectively, "defendants") appeal from an opinion and award of the North Carolina Industrial Commission ("the Commission") finding and concluding that Judy Carolyn Young ("plaintiff") experienced a substantial change of condition within the meaning of section 97-47 of the North Carolina General Statutes. Having carefully examined defendants' assignments of error, we affirm the Commission's opinion and award.

Plaintiff strained her back on 3 March 1992 while picking up a piece of furniture. At the time of the admittedly compensable injury, plaintiff was forty-eight years old and had been employed with defendant-employer for six years. Dr. Robert Hart, a family practitioner who served as defendant-employer's physician, initially treated plaintiff's injury and recommended physical therapy for her complaints of mid-back pain. Plaintiff's symptoms persisted, however, so Dr. Hart referred her to Dr. H. Grey Winfield, III, an orthopedist. Dr. Winfield's examination found plaintiff to have full range of motion in the lower extremity, to be a bit histrionic in her heel-toe walk, and to exhibit some symptom magnification. Dr. Winfield continued to treat plaintiff through 21 May 1992, after which plaintiff did not return for a follow-up assessment.

On her own, plaintiff sought treatment from Bruce Hilton, D.C., a chiropractor, on 9 November 1992, and on 20 July 1993, he rated her as retaining a 5% permanent partial impairment to her back. At the time of the rating, plaintiff continued to experience pain in her back and right hip and tingling in her right leg. The pain never ceased following plaintiff's initial treatment by the various doctors and, instead, increased gradually over time. Plaintiff, therefore, returned to Dr. Hilton for chiropractic treatment of a "popping" right hip on 20 August 1994. Dr. Hilton testified that plaintiff's condition appeared to be the same as when she originally sought his treatment, but the con-

dition had substantially worsened. On 19 October 1994, when plaintiff could no longer physically perform her job, Karen Hightower, plaintiff's supervisor, terminated plaintiff's employment.

On 19 June 1995, plaintiff began treatment with Dr. Dennis Payne, a rheumatologist with expertise concerning fibromyalgia, a chronic muscular pain syndrome that is associated with a nonrestorative sleep pattern. Dr. Payne diagnosed plaintiff as having reactive fibromyalgia resulting from her 3 March 1992 compensable injury.

Plaintiff returned to Dr. Winfield on 2 August 1995 complaining of neck and bilateral arm pain. She also complained of swelling in the hands and back pain that radiated from the neck through the lumbar area and into both legs. Dr. Winfield examined plaintiff and found her to be neurologically intact with a full range of motion for the hips, knees and ankles. Dr. Winfield conducted a series of diagnostic tests, the results of which were normal, and determined that plaintiff's condition was much worse than when he last saw her on 21 May 1992. He concluded, however, that the present symptoms were not causally related to the prior compensable injury.

Plaintiff filed a Form 33, Request for Hearing, on 10 January 1995, alleging a substantial change of condition. The case came on for hearing before Deputy Commissioner Lorrie L. Dollar, who entered an opinion and award on 18 October 1996 finding and concluding that plaintiff had sustained a substantial change of condition within the meaning of section 97-47 of the General Statutes. Defendants appealed to the Full Commission, and on 7 April 1997, the matter was heard by a panel of the Full Commission consisting of Commissioners Thomas J. Bolch, Coy M. Vance, and Dianne C. Sellers. On 2 June 1997, Commissioner Bolch, with Commissioner Vance concurring, filed an opinion and award affirming the deputy commissioner's decision. Commissioner Sellers dissented, however, finding that plaintiff had failed to meet her burden of proving a substantial change of condition.

Defendants appealed to this Court, and in an opinion filed 21 April 1998, we vacated the opinion and award of the Full Commission and remanded the case for more definite factual findings. On remand, the case was considered by a panel comprised of Commissioners Bolch, Sellers, and Christopher Scott (Commissioner Vance had retired). Commissioner Bolch, with Commissioner Scott concurring, entered an opinion and award on 28 January 1998 finding and con-

cluding that plaintiff had undergone a substantial change of condition. Commissioner Sellers again dissented on the same grounds. Defendants now appeal.

---

On appeal from an opinion and award of the Industrial Commission, the reviewing court's task is to determine (1) whether there is any competent evidence of record to support the Commission's factual findings and (2) whether those findings, in turn, provide support for the Commission's conclusions of law. *Porter v. Fieldcrest Cannon, Inc.*, 133 N.C. App. 23, 25, 514 S.E.2d 517, 520 (1999). To that end, the findings by the Commission are binding on the reviewing court if the record contains any competent evidence in their support. *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998), *reh'g denied*, 350 N.C. 108, 532 S.E.2d 522 (1999). This is true, even when the record offers evidence that would support findings to the contrary. *Id.* The Commission's legal conclusions, however, are subject to this Court's *de novo* review. *Lewis v. Craven Regional Medical Center*, 122 N.C. App. 143, 149, 468 S.E.2d 269, 274 (1996).

**[1]** With these principles in mind, we proceed to our discussion of defendants' arguments. Defendants first contend that the Commission disregarded competent evidence and thereby committed reversible error. In essence, defendants assert that the Commission was required to give some weight to the evidence elicited by the cross-examination of Dr. Payne regarding the etiology of fibromyalgia. Defendants also contend that the Commission failed to give proper weight to the opinion testimony of Dr. Winfield. We must disagree.

As defendants point out, "the Commission may not 'wholly disregard or ignore competent evidence' and must consider and evaluate all the evidence" presented by the parties. *Jarvis v. Food Lion, Inc.*, 134 N.C. App. 363, 366-67, 517 S.E.2d 388, 391 (1999) (quoting *Pittman v. International Paper Co.*, 132 N.C. App. 151, 156, 510 S.E.2d 705, 709, *disc. review denied*, 350 N.C. 310, 534 S.E.2d 596 (1999)). This notwithstanding, the Commission is the sole judge of the credibility of the witnesses and the weight be accorded their testimony. *Bailey v. Sears Roebuck & Co.*, 131 N.C. App. 649, 653, 508 S.E.2d 831, 834 (1998). Furthermore, the Commission "may reject a witness' testimony entirely if warranted by disbelief of that witness." *Pittman*, 132 N.C. App. at 156, 510 S.E.2d at 709.

It is apparent from the Commission's findings of fact that it, indeed, considered the opinion testimony of Dr. Winfield as well as the evidence brought out during the cross-examination of Dr. Payne. In Finding of Fact #5, the Commission notes that Dr. Winfield was of the opinion that plaintiff's current complaints were "not causally related to the prior compensable injury." The Commission states, however, that it "[gave] no weight to this opinion inasmuch as Dr. Winfield has no expertise concerning fibromyalgia." Regarding Dr. Payne's testimony on cross-examination, the Commission states the following in Finding of Fact #18:

Defendants' counsel's cross-examination of Dr. Payne did not result in a change of his opinion that plaintiff had disabling fibromyalgia caused or aggravated by her March 3, 1992, injury by accident. Nothing elicited by such cross examination causes the Full Commission to modify its finding of facts.

Since the Commission was well within its authority to reject what it deemed to be unreliable evidence, defendants' argument is without merit.

[2] Defendants next argue that the Commission erred in finding and concluding that plaintiff's fibromyalgia was causally related to her 3 March 1992 injury. Defendants' chief contention is that because the etiology of fibromyalgia cannot be scientifically or objectively determined, Dr. Payne's opinion as to the cause of plaintiff's condition is no more than speculation and conjecture. Again, we disagree.

The Industrial Commission is vested with full authority to find the essential facts in a workers' compensation case, *Bailey*, 131 N.C. App. at 653, 508 S.E.2d at 834, and it is the responsibility of the Commission, not the reviewing court, to weigh the evidence of causation and to assess its credibility, *id.* at 653, 508 S.E.2d at 835. Therefore, this Court can do no more than examine the record to determine whether any competent evidence exists to support the Commission's findings as to causation, and we are not at liberty "to weigh the evidence and then decide the issue on the basis of its weight." *Porter*, 133 N.C. App. at 26, 514 S.E.2d at 520. "[W]hen conflicting evidence is presented, 'the Commission's finding of causal connection between the accident and the disability is conclusive.'" *Bailey*, 131 N.C. App. at 655, 508 S.E.2d at 835 (quoting *Anderson v. Lincoln Construction Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 275 (1965)).

YOUNG v. HICKORY BUS. FURN.

[137 N.C. App. 51 (2000)]

Defendants maintain that Dr. Payne's testimony regarding the cause of plaintiff's condition should have been excluded as unreliable. Defendants take the position that the lack of definitive scientific methodology verifying the cause and effect relationship between plaintiff's compensable injury and her subsequent fibromyalgia rendered Dr. Payne's opinion incompetent and inadmissible. However, Dr. Payne, as an expert in the field of rheumatology and the treatment of fibromyalgia, was in a better position than the fact-finding body to draw a conclusion from the relevant circumstances as to what brought on plaintiff's current condition. The Commission was then free to receive this testimony and adopt Dr. Payne's conclusion as fact. Thus, contrary to defendants' assertion, we conclude that plaintiff has met her burden of establishing a causal connection between the fibromyalgia and her 3 March 1992 injury in terms of "reasonable medical probability."

Dr. Payne testified that "[f]ibromyalgia is a clinical diagnosis," which means that it is diagnosed "based on history and examination rather than doing any type of testing or x-ray studies." He stated that fibromyalgia "produces soft tissue pain and tenderness . . . in very characteristic locations in a person's body." Dr. Payne further stated that "[plaintiff] had the tender points and they were in the characteristic locations that we see in this problem." He indicated that "[plaintiff] fulfill[ed] the American College of Rheumatology criteria for fibromyalgia." According to Dr. Payne, "reactive fibromyalgia" is related, in time, to a particular event and could be caused or aggravated by trauma. While Dr. Payne conceded that fibromyalgia is controversial "because there's difficulty in objectively studying [the condition]," it was his opinion, to a reasonable degree of medical certainty, that plaintiff's compensable "injury could have or would have aggravated or caused the fibromyalgia." Dr. Payne noted further that plaintiff's history did not reveal any causative factor, other than the work-related injury, for the onset of fibromyalgia.

In light of this testimony, we hold that Dr. Payne's opinion regarding the etiology of plaintiff's current condition is more than mere speculation and, thus, was sufficient to support the Commission's finding that "[plaintiff's] reactive fibromyalgia was caused or substantially aggravated by her original injury by accident." *See Hedrick v. PPG Industries*, 126 N.C. App. 354, 484 S.E.2d 856, *disc. review denied*, 346 N.C. 546, 488 S.E.2d 801 (1997) (holding that although cause of dystonia unknown, expert's opinion regarding causation, based on temporal relationship between plaintiff's work-related

injury and onset of condition, was sufficient to support Commission's finding that dystonia was caused by compensable injury); *Keel v. H & V Inc.*, 107 N.C. App. 536, 421 S.E.2d 362 (1992) (stating that causal connection may be established by circumstantial evidence and that absolute medical certainty not required). Defendants' argument, then, fails.

[3] Lastly, defendants assert that the evidence does not support the Commission's conclusion that plaintiff experienced a substantial change of condition, because Dr. Hilton testified that he would have given her the same disability rating in 1995 that he gave her in 1993, i.e., 5% permanent partial impairment to the back. We are not persuaded.

Under section 97-47 of our General Statutes, a "change of condition" refers to " 'a substantial change, after a final award of compensation, of physical capacity to earn and, in some cases, of earnings.' " *East v. Baby Diaper Services, Inc.*, 119 N.C. App. 147, 151, 457 S.E.2d 737, 740 (1995) (quoting *Pratt v. Upholstery Co.*, 252 N.C. 716, 722, 115 S.E.2d 27, 34 (1960)). Whether a change of condition has occurred is a factual question, and whether the facts as found constitute a change of condition is a legal question. *Id.*

Defendants cite no authority for the proposition that an injured employee's disability rating must change in order to conclude that she has suffered a substantial change of condition under section 97-47. Moreover, we note that "[i]n determining if a change of condition has occurred entitling an employee to additional compensation under G.S. 97-47 the primary factor is a change in condition affecting the employee's physical capacity to earn wages[.]" *Lucas v. Bunn Manuf. Co.*, 90 N.C. App. 401, 404, 368 S.E.2d 386, 388 (1988). The record contains ample evidence tending to show that plaintiff's physical condition changed so as to impact her wage-earning capacity. Dr. Winfield testified that when he examined plaintiff on 2 August 1995, her condition was much worse than when he last saw her on 21 May 1992. Dr. Hilton similarly testified that plaintiff's condition had substantially worsened when she returned to him for treatment on 20 August 1994. Furthermore, plaintiff presented evidence that she was terminated from her position with defendant-employer on 19 October 1994, because she was no longer physically able to perform her job. We, therefore, hold that the Commission did not err in concluding that plaintiff underwent a substantial change of condition within the meaning of section 97-47. Accordingly, defendants' argument is overruled.

In light of the foregoing analysis, we affirm the opinion and award of the Industrial Commission.

AFFIRMED.

Judge MARTIN concurs.

Judge HORTON dissents with a separate opinion.

Judge HORTON dissenting.

On 3 March 1992, Judy Carolyn Young (plaintiff) injured her back in a compensable accident while employed by Hickory Business Furniture. After a period of temporary total disability, plaintiff retained a five percent permanent partial disability of her back, for which she was compensated. Plaintiff now contends that she has sustained a substantial change of condition since 15 October 1993, when she last received compensation. In a divided decision, the Full Commission found that plaintiff's condition substantially worsened, that she became unable to work on 19 October 1994 because of fibromyalgia, and that her condition is likely to be permanent. The Full Commission concluded as a matter of law that the medical testimony offered by plaintiff to support a substantial change in her condition "[did] not have to arise to a medical certainty." The Commission concluded that plaintiff met her burden of proof "when her physicians testify that the cause 'could or might' have likely produced the effect."

Where an employee seeks to establish a substantial change in condition pursuant to N.C. Gen. Stat. § 97-47 (1999), the burden is on the employee to prove the causal relationship between the new condition and the injury that is the basis of the award the employee seeks to modify. *Blair v. American Television & Communications Corp.*, 124 N.C. App. 420, 423, 477 S.E.2d 190, 192 (1996) (citations omitted). Here, even assuming that the employee's condition has worsened and that she suffers from fibromyalgia, the Commission erred in finding that there was a causal connection between the original injury by accident to her lower back and the fibromyalgia. The Commission's error resulted from applying the wrong standard to the medical evidence.

Rather than requiring the employee to produce evidence " 'indicat[ing] a reasonable scientific probability that the stated cause pro-

duced the stated result,' " *Phillips v. U.S. Air, Inc.*, 120 N.C. App. 538, 542, 463 S.E.2d 259, 262 (1995), *aff'd*, 343 N.C. 302, 469 S.E.2d 552 (1996) (citation omitted), the Commission concluded that plaintiff's "medical testimony does not have to arise to a medical certainty." Thus the Commission would apparently find that the *Phillips* requirement of "reasonable scientific probability" is met when plaintiff's doctor testified that the compensable accident "could or might" have produced the result (fibromyalgia). Our cases have, however, consistently mandated a higher degree of proof than that required by a majority of the Commission in this case. *See, for example, id.* at 542, 463 S.E.2d at 262; and *Hinson v. National Starch & Chemical Corp.*, 99 N.C. App. 198, 202, 392 S.E.2d 657, 659 (1990).

In *Phillips*, the employee contended that he contracted salmonella from drinking contaminated water at work, and thereafter developed chronic fatigue syndrome. The Commission rejected his claim, finding first that "[t]here is no sufficient convincing medical evidence to any reasonable degree of medical certainty that plaintiff developed his salmonella infection from drinking contaminated water at work . . . ." *Phillips*, 120 N.C. App. at 540-41, 463 S.E.2d at 262-63. The Commission further pointed out that "[t]he exact cause of . . . [chronic fatigue syndrome] remains unknown as does its manner of transmission." *Id.* at 541, 463 S.E.2d at 263. Further, even assuming that Phillips contracted salmonella from contaminated water at work, the Commission found "there is no convincing medical evidence to any reasonable degree of medical certainty that his salmonella infection triggered or otherwise caused him to develop disabling chronic fatigue syndrome. . . ." *Id.*

*Phillips* is strikingly similar to the case before us. Here, plaintiff injured her back at work lifting a chair. Three years later, she was diagnosed with fibromyalgia by Dr. Payne, who is board-certified in Rheumatology. Dr. Payne acknowledged that fibromyalgia is a "very controversial subject in medicine primarily because there's difficulty in objectively studying it [and it is] diagnose[d] . . . based on criteria rather than any type of testing." He also testified that plaintiff met the criteria set out by the American College of Rheumatology for the condition. Dr. Payne then opined that the injury to plaintiff's low back at work "could have or would have aggravated or caused the fibromyalgia." Dr. Payne's reasoning was that he did not know of anything other than her injury at work which might have caused fibromyalgia, but admitted that "a lot of times I have no idea why someone has fibromyalgia. Far and away, fibromyalgia occurs more commonly for

unknown reasons. But she had no other reason that I could discover for having it."

The findings and conclusions of the Commission are based entirely on Dr. Payne's unsupported opinion as to causation. Yet on cross-examination, Dr. Payne acknowledged that plaintiff had gall-bladder surgery in 1994 and that he had "seen cases of fibromyalgia that occur following operations." Second, Dr. Payne acknowledged that he had done no tests to "rule out other forms of rheumatoid disease or illness," although "those studies need to have been done." Third, although Dr. Payne opined that "fibromyalgia can be either caused or aggravated by trauma," he acknowledged that no epidemiological studies have been done in the field of fibromyalgia to support that opinion. Indeed, a 1996 study published in The Journal of Rheumatology indicates that evidence that trauma causes fibromyalgia is "insufficient to establish causal relationships." Frederick Wolfe, The Fibromyalgia Syndrome: A Consensus Report on Fibromyalgia and Disability, 23:3 The Journal of Rheumatology 534 (1996). Thus, "whether an injury . . . caused the patient's [fibromyalgia], a retrodictive (or It Did) causal proposition[,] can rarely be determined to be certainly true or certainly false." *Id. See also Black v. Food Lion, Inc.,* 171 F.3d 308, 313 (5th Cir. 1999) ("Experts in the field conclude that the ultimate cause of fibromyalgia cannot be known, and only an educated guess can be made based on the patient's history.")

Dr. Payne summarized the basis for his causation opinion in the following answer:

I think she does have fibromyalgia and I relate it to the accident primarily because, as I noted, it was not there before and she developed it afterwards. And that's the only piece of information that relates the two.

It is well-settled that evidence which " 'raises a mere conjecture, surmise, and speculation,' " is insufficient to support a finding of causation. *Hinson,* 99 N.C. App. at 202, 392 S.E.2d at 659 (citation omitted). Even Dr. Payne agreed that his opinion had only a *post hoc, ergo propter hoc* (after this, therefore because of this) basis. Black's Law Dictionary defines this *post hoc* type of analysis as "[o]f or relating to the fallacy of assuming causality from temporal sequence; confusing sequence with consequence." (Black's Law Dictionary 1186 (7th ed. 1999). Reduced to its bare essentials, Dr. Payne's reasoning is that because plaintiff's fibromyalgia appeared three years after her on-the-

job low back injury, nothing else appearing, it must have resulted from that prior traumatic injury.

It simply cannot be said, on the facts of this case, that plaintiff offered evidence which indicates a "reasonable scientific probability" that plaintiff's present condition is causally related to her at-work injury. Nothing in this record indicates that Dr. Payne's theory of a causal relationship between trauma and fibromyalgia is widely accepted in the medical profession, nor have the necessary studies been done to demonstrate such a connection. I believe the Commission erred in basing its award on unsupported "could or might" causation testimony, and I would vote to reverse its opinion and award. Therefore, I respectfully dissent from the opinion of the majority which affirms that award.