DEBRA S. EAST, Plaintiff-Appellee v. BABY DIAPER SERVICES, INC., and U.S.F. & G. COMPANY, Defendants-Appellants

No. COA94-819

(Filed 6 June 1995)

**1. Workers' Compensation § 427 (NCI4th)— continuous pain rendering employment impossible—change of condition— sufficiency of evidence**

Evidence that the continuous pain stemming from plaintiff's injury eventually rendered her totally incapable of earning any wages was sufficient to justify the Industrial Commission's finding and conclusion that a substantial change in plaintiff's back condition had occurred since her initial award for permanent partial disability compensation for 36 weeks.

**Am Jur 2d, Workers' Compensation §§ 652-658.**

**2. Workers' Compensation § 427 (NCI4th)— change in condition—testimony of all examining physicians admissible**

Where a plaintiff is seen and examined by several physicians over the course of treatment for a compensable injury, each physician may testify as to plaintiff's condition at the time she was examined if such testimony would aid the Commission in determining whether a change of condition has occurred, and proof should not be limited to the testimony of a physician who examined plaintiff both before and after the change in condition.

**Am Jur 2d, Workers' Compensation §§ 652-658.**

Appeal by defendants from Opinion and Award of the North Carolina Industrial Commission filed 26 April 1994. Heard in the Court of Appeals 19 April 1995.

*Kenneth M. Johnson for plaintiff-appellee.*

*Adams Kleemeier Hagan Hannah & Fouts, by David A. Senter and Betty P. Balcomb, for defendants-appellants.*

WALKER, Judge.

The parties in this action do not dispute that plaintiff was injured at work on 23 September 1987 while moving a heavy storage cart. On 30 September 1987, defendant employer filed an "Employer's Report of Injury to Employee" (I.C. Form 19) listing plaintiff's upper back as the nature and location of injury. On 28 October 1987, the parties entered an "Agreement for Compensation for Disability" (I.C. Form 21) for plaintiff's "injured upper back" with temporary total disability benefits beginning on 15 October 1987 and continuing for the prescribed number of weeks. This agreement was approved by the Industrial Commission on 22 December 1987.

In February 1988, plaintiff underwent a laminectomy which was performed by her treating physician, Dr. Deaton. Plaintiff returned to work on 31 May 1988 in a lighter duty position. In January 1989, Dr. Deaton rated plaintiff as having a 12% permanent partial disability to her back. Based upon Dr. Deaton's rating, the parties signed a "Supplemental Memorandum of Agreement as to Payment of Compensation" (I.C. Form 26) on 30 January 1989 in which defendant carrier agreed to pay plaintiff permanent partial disability compensation for 36 weeks. The Commission approved this agreement on 10

February 1989. The final payment to plaintiff under this agreement was made on 23 March 1989.

Subsequent to her rating by Dr. Deaton, plaintiff continued to complain of pain in her right hip and leg. Dr. Deaton performed further diagnostic tests, but in July 1989 he informed defendant carrier that he could not "objectively document a change of condition since the previous rating." Nonetheless, during 1989, plaintiff missed substantial time from work due to her recurring pain, and on 15 August 1989, defendant employer terminated plaintiff.

In August 1989, plaintiff began to see Drs. Paul and Dye, who were partners in an orthopedic practice. On 11 September 1989, Dr. Paul indicated in his office notes that he felt plaintiff was suffering from a worsening of her condition. On 1 June 1990, plaintiff filed a "Request that Claim Be Assigned for Hearing" (I.C. Form 33), claiming that she had undergone a substantial change in the condition of her back and seeking permanent partial disability compensation for days missed after 15 August 1989 (the date of her termination by defendant employer) and payment of medical expenses and treatment.

In March and April 1991 plaintiff was seen by Dr. Price, who had been appointed by the Commission to evaluate plaintiff with regard to a change of condition. Dr. Price noted that plaintiff was experiencing recurrent pain and had no significant relief of her pain following her February 1988 surgery. In his opinion plaintiff was suffering from scarring. In May 1991, plaintiff was diagnosed with a bulging disc in her cervical spine. On 6 May 1991, plaintiff filed another Form 33, seeking additional compensation due to a change in the condition of her back.

In an Opinion and Award filed 29 June 1992, Deputy Commissioner Edward Garner, Jr. found that "[a]s a result of [her] injury by accident, plaintiff has suffered a substantial change in her back condition and thereby requires further medical treatment." He concluded that plaintiff was entitled to a review of the prior award of compensation pursuant to N.C. Gen. Stat. § 97-47. He further concluded:

2. A change of condition is not only indicated from a standpoint of when a physician is able to indicate it. A change of condition can also be indicated on what one['s] employers or one['s] own opinion is as to his or her ability to engage in gainful employment.

**EAST v. BABY DIAPER SERVICES, INC.**

[119 N.C. App. 147 (1995)]

Plaintiff was released to return to gainful employment and did in fact return to gainful employment with defendant employer. On August 15, 1989, [Mr.] Marshall Morgan, Vice President of defendant employer, wrote to plaintiff and stated that due to recurring medical problems which made her unable to do the task of her job, the employment of plaintiff had been terminated. This documentation constitutes a change of her condition. Plaintiff was released by a treating physician to return to light duty work and in such time as she is no longer able to perform light duty work, then [sic] in and of itself constitutes a change of condition. In determining if a change of condition has occurred, entitling an employee to additional compensation under this section, the primary factor is a change in condition affecting the employee['s] physical capacity to earn wages. *Lucas v. Bunn Manufacturing Co.*, 90 N.C. App. 401, 368 S.E.2d 386 (1988).

. . .

4. In view of the totality of the deposition[s] of the treating physicians, in light of the stipulated medical records that were presented at the hearing, plaintiff has undergone a substantial change in condition from a medical standpoint. This substantial change of condition is further boasted [sic] by plaintiff's work record which is not contested. That work record demonstrated that plaintiff has since been released to return to gainful employment on a light duty basis, attempted to engage in gainful employment and has made every reasonable effort to do so and has only failed to go forwarded [sic] with these efforts when the complications or increased back pain and immobility has [sic] prevented her from doing so.

5. As a result of the injury by accident giving rise to this claim, plaintiff has been temporarily totally disabled since February 10, 1989, and she is entitled to temporary total disability compensation . . . beginning February 10, 1989, and continuing thereafter until such time as plaintiff reaches maximum medical improvement or returns to work. N.C.G.S. § 97-29.

Defendants appealed to the Full Commission, which modified Conclusion of Law No. 5 to state that plaintiff was entitled to temporary total disability compensation beginning 15 August 1989 instead of 10 February 1989 but otherwise adopted and affirmed the deputy commissioner's findings of fact and conclusions of law.

**EAST v. BABY DIAPER SERVICES, INC.**

[119 N.C. App. 147 (1995)]

In reviewing decisions from the Full Commission, the scope of our review is limited to consideration of (1) whether there is competent evidence to support the Commission's findings of fact; and (2) whether the Commission's conclusions of law are supported by its findings of fact. *Hendrix v. Linn-Corriher Corp.*, 317 N.C. 179, 186, 345 S.E.2d 374, 379 (1986). If there is any evidence which directly or by reasonable inference tends to support the Commission's findings, this Court is bound by such evidence, even though there is evidence that would have supported a finding to the contrary. *Porterfield v. RPC Corp.*, 47 N.C. App. 140, 144, 266 S.E.2d 760, 762 (1980).

A change in condition under N.C. Gen. Stat. § 97-47 (1991) occurs when there "is a substantial change, after a final award of compensation, of physical capacity to earn and, in some cases, of earnings." *Pratt v. Upholstery Co.*, 252 N.C. 716, 722, 115 S.E.2d 27, 34 (1960). "Whether there has been a change of condition is a question of fact; whether the facts found amount to a change of condition is a question of law." *Id.* at 722, 115 S.E.2d at 33-34.

[1] Defendants contend that "[p]laintiff's recurrent lumbar pain and her inability to return to work do not constitute a substantial change in condition." They cite *Pratt* for the proposition that if the employee is simply suffering from "a continued incapacity of the same kind and character and for the same injury" which existed at the time the award was made, she has not suffered from a change of condition. *Pratt*, 252 N.C. at 722, 115 S.E.2d at 33. Defendants argue that the lay and medical evidence "unequivocally establishes that plaintiff is suffering from nothing more than lumbar pain of the same kind and character for which the original award was made."

However, as the Commission correctly recognized in its Opinion and Award, this Court has held that "[i]n determining if a change of condition has occurred entitling an employee to additional compensation under G.S. 97-47 the primary factor is a change in condition *affecting the employee's physical capacity to earn wages . . . ." Lucas v. Bunn Manuf. Co.*, 90 N.C. App. 401, 404, 368 S.E.2d 386, 388 (1988) (emphasis added).

In *Lucas*, plaintiff sustained a compensable back injury on 30 April 1984 while working as a hemmer for the defendant. *Id.* at 401, 368 S.E.2d at 387. In December 1984, at the end of the healing period, the plaintiff was rated with a 15% permanent partial disability of the back and the parties agreed on the proper amount of compensation. *Id.* at 402, 368 S.E.2d at 387.

**EAST v. BABY DIAPER SERVICES, INC.**

[119 N.C. App. 147 (1995)]

On 3 January 1985, the plaintiff resumed working as a hemmer for another company because defendant had no openings. The plaintiff quit working altogether on 1 February 1985 because of increasing back pain. After examining the plaintiff and prescribing some therapy which the plaintiff was unable to tolerate, the plaintiff's physician determined that he could not prescribe further treatment without performing additional tests. The defendant refused to authorize or pay for the tests, contending that its obligations to pay plaintiff terminated when the last disability payment was made on 21 February 1985. Following hearings requested by the plaintiff, the deputy commissioner found and concluded that a substantial change occurred in the condition of the plaintiff's back after the December 1984 agreement was approved and that she was then temporarily totally disabled and entitled to further benefits. The Full Commission adopted and affirmed the deputy commissioner's findings and conclusions. *Id.* at 402, 368 S.E.2d at 387.

This Court held that the Commission's finding that the plaintiff had experienced a change of condition was clearly supported by competent evidence. The Court noted that both the plaintiff and her husband testified that the plaintiff's condition was worse after she went back to work and that she was no longer able to do her housework. *Id.* at 403, 368 S.E.2d at 387. The Court also pointed to the statement of the plaintiff's treating physician that "this patient's condition has considerably changed from the November time when she was discharged from here and that she needs further treatment for this condition." *Id.* The physician testified that when he saw the plaintiff in February 1985, he felt she could not work at all. *Id.* at 404, 368 S.E.2d at 388. The Court rejected the defendant's argument that no substantial change had occurred because the plaintiff's pain and other symptoms were only "slightly worse" than before:

> [W]hile the physical and symptomatic changes that occurred here—increases in the intensity and frequency of pain and muscle spasms and a decrease in the movement of the back muscles— may not appear to be great when considered by themselves and measured in the abstract, their effect upon the plaintiff was very profound, indeed, reminiscent of the straw and the camel's back, because they changed her from a person capable of working and earning wages five days a week to one incapable of working at all and earning anything.

*Id.*

**EAST v. BABY DIAPER SERVICES, INC.**

[119 N.C. App. 147 (1995)]

In the instant case, Dr. Deaton released plaintiff to return to work in May 1988. At that time, he advised plaintiff that she would not be able to return to the same type of work she had been doing prior to her injury and that she would have to live with a certain amount of pain and physical restrictions for the rest of her life. Plaintiff returned to a lighter duty job with defendant employer, but she continued to experience pain which became more severe as time passed. Return visits to Dr. Deaton revealed that plaintiff had experienced post-operative changes in her lower back area. Plaintiff missed numerous days of work during 1988 as a result of pain directly attributable to her injury. When Dr. Deaton rated plaintiff in January 1989, he noted that she continued to experience pain in her right hip and leg. As Dr. Deaton's notes confirm, plaintiff continued to complain of severe pain throughout 1989, and she continued to miss time from work. In August 1989, plaintiff began to see Drs. Dye and Paul. On 15 August 1989, Dr. Dye took plaintiff out of work for one week because of her severe pain. As a result of this absence, plaintiff's supervisor terminated her, stating that she had "recurring medical problems which render her unable to do the tasks of her job" and that "[t]here is no 'lighter work' available as was suggested by her physician." Plaintiff testified that she tried several other jobs after her termination by defendant employer but was unable to perform them satisfactorily because of pain.

Thus, the evidence before the Commission showed that the continuous pain stemming from plaintiff's injury eventually rendered her totally incapable of earning any wages. Guided by *Lucas*, we hold that this evidence was sufficient to justify the Commission's finding and conclusion that a substantial change in plaintiff's back condition had occurred since the initial award.

Defendants rely on *Sawyer v. Ferebee & Son, Inc.*, 78 N.C. App. 212, 336 S.E.2d 643 (1985), *rev. denied*, 315 N.C. 590, 341 S.E.2d 29 (1986), to support their assertion that the testimony of Drs. Paul, Dye, and Price is incompetent to prove plaintiff's condition changed after the 1989 award since none of those physicians had examined plaintiff prior to that award. In *Sawyer*, the Court affirmed the Commission's conclusion that the plaintiff had not experienced a change of condition. The Court based its holding on the fact that the plaintiff's own doctor testified that her condition had remained "essentially unchanged." *Id.* at 214, 336 S.E.2d at 644. The Court further stated that if the plaintiff's doctor did not have first-hand knowledge of her condition at the time of the initial award, he was not competent to

testify as to whether the plaintiff had suffered a change of condition since that time. *Id.* Defendants point out that Dr. Deaton, the only testifying physician who saw plaintiff both before and after the original compensation award, testified that in July 1989 he could not objectively document a change in plaintiff's condition since her January 1989 rating. Defendants argue that this testimony is the only competent evidence on that issue.

[2] However, in *Styron v. Duke University Hospital,* decided after *Sawyer,* this Court stated:

> We see no reason to inhibit an applicant's ability to prove a change of condition by limiting proof to the testimony of a physician who had examined the plaintiff before and after the change in condition. Generally speaking, such physician may be unavailable for testifying during a later hearing for greater benefits. Further, the Commission, not the testifying physician, makes the crucial comparison of conditions. From an expert's testimony of the plaintiff's current condition, the Commission may observe that this condition is worse than the condition described at an earlier point in time by other experts.

*Styron,* 96 N.C. App. 356, 358, 385 S.E.2d 519, 520 (1989). Thus, where a plaintiff is seen and examined by several physicians over the course of treatment for a compensable injury, each physician may testify as to the plaintiff's condition *at the time she was examined* if such testimony would aid the Commission in determining whether a change of condition has occurred.

Dr. Paul testified that when he first saw plaintiff in September 1989, he felt her pain was "definitely a worsening of [her] original condition in terms of her symptoms over a period of time where she had been relatively quiescent but with more of a chronic nature of pain." Dr. Price, who examined plaintiff in March and April 1991, noted that plaintiff had not experienced any significant relief of her pain since her surgery and that her increased pain might be due to scarring. He stated, "It is my feeling the difficulty which is presently being evaluated for which she is being seen is related to her original accident and her original surgery." In May 1991, plaintiff was seen by Dr. Dye after hearing a loud pop and experiencing pain on the right side of her neck and shoulder area. Dr. Dye concluded from subsequent test results that she had a bulging disc at the C4-C5 area on the right side, which was her symptomatic side, and that the bulging disc could have been in existence in 1989. He further testified that his

examination of plaintiff led him to conclude that plaintiff had undergone a change of condition in regard to her cervical spine. Under *Styron*, the Commission properly considered this evidence in reaching its decision to award plaintiff additional compensation based on a change of her back condition.

We note that the Commission in its conclusion did not differentiate between plaintiff's lower back injury and her cervical spine injury, and we also decline to do so. We hold that there was competent evidence to support the Commission's finding that plaintiff suffered a substantial change in her back condition and that this finding justifies the Commission's conclusion that "plaintiff experienced a substantial change in the condition of her compensable back injury . . ." under N.C. Gen. Stat. § 97-47.

The Opinion and Award of the Full Commission is hereby

Affirmed.

Judges EAGLES and MARTIN, JOHN C. concur.