Plaintiff suffered her injury by accident in this case on June 15, 1989. An initial hearing was held on January 12, 1992, and an opinion entered by Deputy Commissioner Joey Barnes on March 30, 1993. After an appeal by defendants, the Full Commission reviewed the matter on April 25, 1994, and on July 14, 1994, issued an Opinion and Award which adopted and affirmed the opinion by Deputy Commissioner Barnes.
The current phase of the case concerns the questions whether plaintiff has sustained a change of condition since the hearing date of January 12, 1992 and whether she has reached maximum medical improvement. In its July 14, 1994, Opinion and Award the Full Commission determined "[I]n light of the fact that plaintiff has been unable to attend the pain clinic as prescribed, plaintiff has not yet reached maximum medical improvement.
***********
The Full Commission has reviewed the Opinion and Award of Deputy Commissioner Hoag based upon the record of the proceedings before Deputy Commissioner Hoag and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission reverses the Deputy Commissioners denial of benefits and enters the following Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are bound by and subject to the provisions of the North Carolina Workers Compensation Act.
2. An employer-employee relationship existed between the parties at all relevant times.
3. Continental Insurance Company is the carrier on the risk.
4. Plaintiffs average weekly wage at all relevant times were $564.00.
5. The parties submitted the following medical records, which were stipulated into evidence:
a) Dr. George Tokodi;
b) Dr. James M. Dauphin;
c) Dr. Ernest Miller;
d) Dr. Michael Shramowiat;
e) Parkersburg Radiology Services
6. Industrial Commission Form 28B was stipulated into evidence.
7. Plaintiff sustained a compensable injury by accident on June 15, 1989 which was the subject of an Opinion and Award filed by Deputy Commissioner Joey Barnes on March 30, 1993 and an Opinion and Award filed by the Full Commission on July 18, 1994.
8. The questions to be resolved are:
a) Has plaintiff sustained a change in condition; and,
b) Has plaintiff reached maximum medical improvement since her injury by accident of June 1989?
***********
Based upon all of the competent evidence in the record and the reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was employed by defendant-employer as the manager of a shoe store in Wilmington, North Carolina. On June 15, 1989, plaintiff was injured while unloading a truck as part of her duties. Plaintiff was taking a bottom shelf off at the back of the store and moving it up to make room to place shoes and while doing this she felt something "pull in her back and immediately began experiencing sharp pain.
2. On June 16, 1989, plaintiff reported the incident of the previous day to her district supervisor, Eugene Briles. Mr. Briles asked plaintiff if she had gone to a doctor, and plaintiff informed him that she had not, since the store was short on help and she could not leave.
4. Throughout the remainder of June and into July 1989, plaintiff had back pain. She had some difficulty getting in and out of bed. However, plaintiff continued to work 10 to 12 hours a day, 60 to 70 hours a week.
5. At the end of July 1989, plaintiff asked both her district supervisor and her regional vice president for a vacation so that she could take time off to take care of her back since she was in pain and having difficulty performing her duties at work. She was not permitted to take time off. Consequently, plaintiff submitted a two weeks notice of resignation.
6. While working out her notice, plaintiff once again inquired of her district supervisor about seeing a doctor, she was informed that since she had not filed an accident report, defendant-employer would not assume responsibility for any injury. At that point, plaintiff called defendant-employers Human Resources Department in Columbus, Ohio. She gained permission to see a doctor. Mr. Briles was required to file an accident report.
7. On July 26, 1989, plaintiff presented to Medic Urgent Care Facility in Wilmington complaining of pain in her back in the "sacral pelvic area, as a result of "pulling on shelves at work on June 15. The initial diagnosis was a "back strain and plaintiff was released to light duty work. The consistent factor throughout the course of treatment of plaintiff was the refusal of defendants to authorize pain management treatment for plaintiff and the decline which this caused in plaintiffs ability to earn wages.
8. Plaintiffs last day of work for defendant-employer was August 5, 1989.
9. In September of 1989, plaintiff moved to West Virginia and was seen initially by Dr. George Tokodi, Jr. an osteopathic physician specializing in orthopedics, on September 11, 1989. Plaintiff informed Dr. Tokodi that she had hurt her back "when pulling on some shelves in a shoe store. Dr. Tokodi diagnosed an acute lumbosacral sprain, and also found evidence of a "subligamentous disc herniation, without evidence of stenosis. At Dr. Tokodis recommendation, plaintiff continued to receive physical therapy until the end of September, 1989, when plaintiff moved to Ohio.
10. On or about December 1, 1989 plaintiff saw a chiropractor, Dr. Mike Johnson, to see if she could get any relief from her pain. The chiropractic treatments did not help, and accordingly, plaintiff stopped seeing the chiropractor at the end of December 1989.
11. Beginning in January and February 1990, plaintiff began having trouble sleeping. Plaintiffs right leg would go numb, and there would be radiating pain down into the leg. At or about this time, plaintiff made contact with defendant-carrier, and asked for a referral to a local doctor. Plaintiff was referred to Dr. J. M. Dauphin, an orthopedic surgeon in Parkersburg, West Virginia who first saw plaintiff on or about May 10, 1990. At that time, plaintiff was complaining of "primarily right sided leg pain going down to the foot, and Dr. Dauphins initial impressions were "possible herniated disc at L5 with lumbar sprain. By this time, plaintiff was pregnant, and Dr. Dauphin recommended that plaintiff start an exercise program somewhere between three and six weeks post-partum, and obtain a CT Lumbar Scan at that time to confirm or deny the presence of a herniated lumbar disc.
12. After plaintiffs child was born, she again saw Dr. Dauphin on October 4, 1990, complaining that her back pain had been worse while she was pregnant. A CT Scan was scheduled by Dr. Dauphin for October 10, 1990, which CT Scan revealed a bulging disc at L-4 and L-5, and accordingly, Dr. Dauphin recommended "back school for plaintiff and indicated that he would see her back in a month.
13. Dr. Dauphin next saw plaintiff on November 8, 1990, at which time plaintiff was complaining of continued pain on the right side, radiating down to plaintiffs pelvis, down her leg to the foot. Dr. Dauphins diagnosis on that day was "chronic SI joint sprain with a superimposed lumbar disc bulge which is probably subclinical and of no relevance.
14. Dr. Dauphin released plaintiff to return to work as of that date, November 8, 1990.
15. Thereafter, plaintiff attempted to obtain employment, and was eventually successful in doing so, in February, 1991. Her employment, working in a shoe store, comparable to the type of employment in which she was engaging in at the time of the injury by accident, caused her extreme difficulty, and she was only able to work approximately six (6) weeks.
16. Dr. Dauphin continued to see plaintiff through January, 1992, during which time Dr. Dauphin prescribed Ibuprofen for plaintiffs continued pain, and indicated to plaintiff that he (Dr. Dauphin) would attempt to get plaintiff admitted into a pain management center.
17. Dr. Dauphins attempts to schedule plaintiff for the pain center were unsuccessful in that defendants were unwilling to bear the cost and expenses associated with plaintiff being seen in this pain clinic.
18. Although the July 14, 1994, Award of the Full Commission directed that defendants would pay "all medical expenses incurred by plaintiff as a result of her injury by accident on June 15, 1989, including future treatment and payment for Ibuprofen, defendants continued to refuse to authorize treatment at a pain clinic and did not authorize medical treatment needed to permit plaintiff to resume gainful employment.
19. On September 29, 1994, Dr. Dauphin saw plaintiff for the final time for an evaluation of her condition. Dr. Dauphin had not treated plaintiff since 1992. Dr. Dauphin noted change in plaintiffs condition and deterioration in muscle strength since his prior examinations of plaintiff.
20. Based upon Dr. Dauphins examination of plaintiff, he determined that she was unable to perform her prior job. He again recommended that plaintiff be treated at a pain management clinic. Dr. Miller testified that her chronic pain syndrome that rendered her unable to work on September 24, 1994 was caused by her workrelated injury in 1989.
21. Dr. Ernest Miller, an osteopathic physician in Parkersburg, West Virginia, first saw plaintiff on January 14, 1994. His primary concern was plaintiffs depression, and she continued treating with Dr. Miller. By March she was experiencing parathesia in her thigh. Dr. Miller continued to treat plaintiff with Prozac and muscle relaxants. Plaintiff continued treating with Dr. Miller and in July 1995, Dr. Miller recommended Prozac and Pamelor. At the next visit on August 18, 1995, the diagnosis was of lumbar strain and depression. Treatment with pain relief, anti-inflammatory and anti-depressant prescription medications continued, as well as osteopathic manipulative therapy, during 1995 and 1996. Dr. Miller treated plaintiff with a variety of prescription medications to combat her pain, sleeplessness and depression, all of which were caused by her compensable injury. Dr. Miller determined that plaintiff has developed fibromyalgia. On January 31, 1997, an express finding of fibromyalgia was made based upon multiple paired tender points, depression, sleep problems and the persistent nature of her problems. Dr. Miller believed the initial injury triggered the fibromyalgia.
22. Plaintiffs primary treating physician prior to the initial award in this case was Dr. James Dauphin. He treated plaintiff from 1990 through 1992, but he is an orthopedic surgeon and recommended pain management clinics, which defendants refused to authorize. When he saw the plaintiff on September 29, 1994, approximately ten weeks after the entry of the final Opinion and Award, he found that her condition had worsened. Dr. Dauphin rendered an opinion, and the Full Commission finds as a fact, that the plaintiff suffered from chronic pain syndrome which had not been treated at a pain management clinic as he had recommended in 1992. Dr. Dauphin further testified, and the Full Commission finds as fact, that patients with chronic pain syndrome do not tend to get better without treatment because without treatment a "vicious cycle develops. Plaintiffs chronic pain syndrome was attributable to her initial compensable injury in 1989.
23. Subsequently, plaintiff was treated by Dr. Mike Shramowiat, a pain management specialist. Plaintiff was first authorized to see Dr. Shramowiat on December 7, 1998. Dr. Shramowiat does not employ a diagnosis of "fibromyalgia but he did diagnose the plaintiff as suffering from chronic pain syndrome. As have all her treating physicians since September, 1994, Dr. Shramowiat has found plaintiff to be unable to perform her prior job. Plaintiffs condition was consistent with someone who had had chronic pain syndrome since 1994. In particular, he noted her "flat affect at her initial visits.
24. As of December 11, 1998, the date of the hearing before Deputy Commissioner Hoag, plaintiff was unable to sit or stand for any prolonged period of time and her condition had worsened as compared with the date of her first hearing, January 12, 1992. Plaintiff worked 60-70 hours per week before her injury, could do limited work at the time of the first hearing, but as of December 11, 1998 could no longer work. Defendants have not furnished to plaintiff either the medical or vocational assistance necessary to permit her to return to gainful employment.
25. Plaintiff suffers from fibromyalagia/chronic pain syndrome caused by her work-related injury of June 15, 1989. Plaintiff is temporarily and totally disabled from work due to her fibromyalagia/chronic pain syndrome caused by an injury by accident arising out of and in the course and scope of her employment with defendant-employer. As a result of her fibromyalagia/chronic pain syndrome, plaintiff has been temporarily and totally disabled from work since her visit with Dr. Dauphin on September 24, 1994.
26. Defendants last made a payment to plaintiff for disability on March 6, 1996, and plaintiff filed this request for a new award on August 26, 1996. Plaintiffs disability from her fibromyalagia/chronic pain syndrome constitutes a change of condition entitling her to a modification of the previous award entered in this matter.
27. Defendants are entitled to a credit for the amounts paid to plaintiff for temporary partial disability from September 29, 1994, through March 6, 1996.
28. Plaintiff suffered a compensable injury on June 15, 1989 which was the subject of an Opinion and Award more than five years later; the compensable injury had not reached maximum medical improvement and worsened because of lack of proper treatment; within four months after the filing of a Form 28B, plaintiff requested that a hearing be held; plaintiff now suffers from either chronic pain syndrome or fibromyalgia caused by her compensable injury; plaintiff now cannot perform her previous job. Plaintiff is continually in need of medical attention and has not reached maximum medical improvement.
***********
Based upon the foregoing findings of fact and conclusions of law the Full Commission reaches the following additional:
 CONCLUSIONS OF LAW
1. In determining if a change of condition has occurred, the primary factor is whether the employee has sustained a change of condition affecting the employees physical capacity to earn wages. East v. BabyDiaper Service, Inc., 119 N.C. App. 147, 151, 457 S.E.2d 737, 740 (1995), quoting Lucas v. Bunn Manuf. Co., 90 N.C. App. 401, 404, 368 S.E.2d 386,388 (1988).
2. In a case of reopening a claim, as with the initial claim, the claimant has the burden of proving both the existences of her disability and its degree. Taylor v. Margaret R. Pardee Mem. Hosp., 83 N.C. App. 385,350 S.E.2d 148 (1986), cert. denied, 319 N.C. 410, 354 S.E.2d 729 (1987).
3. "[T]he burden is on the party seeking the modification to prove the existence of the new condition and that it is causally related to the injury that is the basis of the award the party seeks to modify. Blair v.American Television Communications Corp., 124 N.C. App. 420, 423,477 S.E.2d 190, 192 (1996). An employee satisfies this burden by producing medical evidence showing "he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment. Russell v. Lowes Product Distribution, 108 N.C. App. 762,765, 425 S.E.2d 454, 457 (1993).
4. An applicant need not limit proof of a change in condition to the testimony of a physician who had examined the plaintiff before and after the change in condition. Styron v. Duke University Hospital,96 N.C. App. 356, 385 S.E.2d 519 (1989). Circumstantial evidence has been held sufficient and direct proof is not required to establish a claim.Lumley v. Dancy Construction Company, 79 N.C. App. 114, 339 S.E.2d 9
(1986).
5. The competent credible evidence of record supports plaintiffs claim that she has sustained a substantial change of condition under the law. N.C. Gen. Stat. 97-47, Young v. Hickory Business Furniture, ___ N.C. App. ___, ___ S.E.2d ___ (March 21, 2000).
6. Since she has not reached maximum medical improvement and is unable to work because of her injury, plaintiff is entitled to ongoing temporary total disability compensation until her condition improves to the point that she is able to be gainfully employed.
7. Plaintiff is entitled to compensation at the rate of $376.00 per week from September 29, 1994, for the temporary total disability she sustained as a result of this injury by accident, subject to a credit in favor of defendants for the amounts paid by defendants for temporary total disability through and including March 6, 1996. N.C. Gen. Stat. 97-47
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorneys fee herein approved, defendants shall pay temporary total disability compensation to plaintiff at the rate of $376.00 per week from September 29, 1994 and continuing until further orders of the Commission, subject to a credit for the amounts paid by defendants for temporary total disability through and including March 6, 1996. As much of said compensation as has accrued shall be paid to plaintiff in a lump sum.
2. A reasonable attorneys fee of twenty-five percent of compensation awarded in paragraph 1 herein is approved to be deducted from sums due plaintiff and defendants shall pay it directly to plaintiffs counsel. Thereafter, every fourth check shall be paid directly to counsel.
3. Defendants shall pay medical expenses incurred or to be incurred reasonably related to the compensable injuries and resulting chronic pain syndrome and depression.
4. Defendants shall pay the costs.
This 31st day of August 2000.
S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/_______________ CHRISTOPHER SCOTT COMMISSIONER
DISSENTING:
S/_______________ DIANNE C. SELLERS COMMISSIONER