Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission adopts with minor modifications the Opinion and Award of the Deputy Commissioner.
 *********** RULING ON MOTION
On 11 July 2001, defendants filed a Motion to Receive Additional Evidence consisting of plaintiff's Contentions and Proposed Opinion and Award which were filed with the deputy commissioner on 6 February 1997. Defendants contend that these documents are necessary to support the defenses of res judicata and collateral estoppel. The Full Commission hereby finds that the addition of these documents at this time is not necessary to the determination of the issues raised in this case. Therefore, defendants' motion is DENIED.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over this matter, and plaintiff was an employee of defendant Abex Corporation at the time in question.
2. Defendant-employer was a qualified self-insurer, and Crawford and Company was the servicing agent.
3. A Form 21 Agreement was executed on 4 May 1994, pursuant to which plaintiff was paid compensation for temporary total disability from 19 April 1994 until 6 November 1994. Additional compensation was paid pursuant to the Opinion and Award of former Deputy Commissioner Margaret Morgan, filed 27 August 1997. Plaintiff's average weekly wage is sufficient to yield the maximum compensation rate of $466.00.
 ***********
Based upon the stipulations and the competent evidence in the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff suffered a compensable injury by accident on 19 April 1994, when she fell at work and injured her back. Plaintiff's claim was accepted as compensable pursuant to a Form 21 Agreement for Payment of Compensation, and defendant began paying temporary total disability compensation. Plaintiff attempted to return to work at her regular job of drill operator on 21 July 1994, but was unable to perform the job tasks and she left after less than an hour. In November 1994, plaintiff returned to work in a light duty position called tearing tickets, which involved sitting and tearing instruction tickets and placing them in envelopes. She started at four hours per day and gradually increased. In December 1994, plaintiff went on a previously scheduled vacation which lasted until 3 January 1995.
2. When plaintiff returned to work she began splitting her time between tearing tickets and another light duty job operating a grinder grinding up scrap blocks for reuse. The ticket tearing job was phased out and plaintiff eventually operated the grinder full time. In March 1995, plaintiff was released by her treating physician to return to work full time without restrictions and on 9 March 1995 she was returned to her position of drilling brake blocks at a drill press. Plaintiff was required to maintain a standard of producing 1900 blocks per day. In May 1995, plaintiff was terminated by defendant for failure to meet production requirements and perceived lack of effort.
3. A hearing was held before former Deputy Commissioner Margaret Morgan on 24 May 1996. After medical testimony was taken by deposition, Deputy Commissioner Morgan filed an Opinion and Award in which she found and concluded that plaintiff was able to return to work with no restrictions in March 1995. Accordingly, plaintiff was not entitled to additional compensation for temporary total disability. Deputy Commissioner Morgan awarded compensation for a 5% permanent partial impairment of plaintiff back, along with a short period of temporary partial disability benefits in January and February of 1995. Plaintiff's psychological condition and its possible relation to plaintiff's disability was not addressed in Deputy Commissioner Morgan's Opinion and Award. That Opinion and Award was initially appealed from; however, plaintiff withdrew her appeal which was allowed by the Full Commission by Order dated 3 March 1998.
4. After the record closed in the case before Deputy Commissioner Morgan, plaintiff was seen on 12 August 1997 by Dr. Anthony Wheeler, a neurologist and pain specialist who had been plaintiff's primary treating physician in 1994 and 1995. Dr. Wheeler was of the opinion in February of 1995 that plaintiff could work at her regular job without restrictions. On 12 August 1997, he was of the opinion that plaintiff's condition had changed, in that "her psychological status had deteriorated very significantly." Dr. Wheeler noted that in 1995 plaintiff wasn't happy with her condition, but "she was in control and she was willing . . . to return to work and cooperate with us." He described plaintiff in 1997 as "she's a mess psychologically." Dr. Wheeler recommended that plaintiff obtain treatment at a pain center. Dr. Wheeler testified and the Full Commission finds that plaintiff's chronic pain which resulted from her compensable injury, along with the psychological difficulties resulting from her pain and disability, caused her to deteriorate to the point that she had become unable to do any work. Plaintiff had regressed from being released from medical care to needing extensive medical treatment.
5. Dr. Todd Chapman, the orthopedist who treated plaintiff in 1994 and 1995 and who assigned a rating of 5% permanent partial impairment of her back, examined plaintiff again on 18 August 1998. At that time he, like Dr. Wheeler, was of the opinion and the Full Commission finds, that plaintiff had succumbed to her pain resulting from her back injury to the point that she was totally disabled and needed treatment for depression. He judged plaintiff's emotional state to be so severe that he feared she would commit suicide.
6. The Full Commission defers to and adopts the following finding of fact made by Deputy Commissioner Bost based upon his observation of plaintiff at the hearing on 30 June 1999: "Plaintiff's testimony and demeanor at hearing were consistent with the condition described by Drs. Wheeler and Chapman in their notes and depositions. She was obviously miserably depressed and in a great amount of pain. She appeared, as the testifying physicians had described, to have been exhausted by chronic pain to the point that she is unable to cope with it."
7. Plaintiff has been unable to obtain any of the treatment recommended by Drs. Wheeler and Chapman, because defendant is not willing to pay for the recommended treatment.
8. Archie Propst, plaintiff's former supervisor, testified that plaintiff was in worse condition at the hearing before the Deputy Commissioner than she had been when she was terminated and would be unable to work for defendant.
9. Plaintiff's depression is a direct and natural consequence of her admittedly compensable injury.
10. As of 13 February 1995, plaintiff was able to work at her regular job and she had been released from care by her treating physicians to return to work without restrictions.
11. As of 12 August 1997, as a result of gradual and continuous deterioration of her compensable back injury, the pain caused by her back condition, and the resulting depression due to her inability to cope with her chronic pain, plaintiff was unable to work and was in need of immediate and extensive medical care. Plaintiff's current condition, both physical and psychological, represents a substantial change of condition within the meaning of N.C. Gen. Stat. § 97-47. As of 12 August 1997 and from that date forward, plaintiff has continued to be totally disabled from work.
12. Plaintiff is in need of medical treatment as prescribed by Drs. Wheeler and Chapman as a result of the worsening of her compensable condition.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. The competent credible evidence of record supports plaintiffs claim that she has sustained a substantial change of condition under the law. N.C. Gen. Stat. § 97-47.
2. A change of condition refers to "a substantial change, after a final award of compensation, of physical capacity to earn and, in some cases, of earnings." East v. Baby Diaper Services, Inc.,119 N.C. App. 147, 151, 457 S.E.2d 737, 740 (1995) (quoting Pratt v.Upholstery Co., 252 N.C. 716, 722, 115 S.E.2d 27, 34 (1960)). "This `change in condition' can consist of either a change in the claimant's physical condition that impacts his earning capacity, a change in the claimant's earning capacity even though claimant's physical condition remains unchanged, or a change in the degree of disability even though claimant's physical condition remains unchanged." Blair v. AmericanTelevision Communications Corp., 124 N.C. App. 420, 423, 477 S.E.2d 190,192 (1996). The Appellate Courts have held that where psychiatric problems which result from a compensable injury adversely affect the employee's ability to work, the psychiatric condition can constitute a change of condition under N.C. Gen. Stat. § 97-47. See Lucas v. BunnMfg. Co., 90 N.C. App. 401, 368 S.E.2d 386 (1988); Haponski v.Constructor's Inc., 87 N.C. App. 95, 360 S.E.2d 109 (1987); Fayne v.Fieldcrest Mills, Inc., 54 N.C. App. 144, 282 S.E.2d 539 (1981), disc.review denied, 304 N.C. 725, 288 S.E.2d 380 (1982). The party seeking to modify an award based on a change of condition bears the burden of proving that a new condition exists and that it is causally related to the injury upon which the award is based. Blair v. American Television Communications Corp., 124 N.C. App. 420, 477 S.E.2d 190 (1996). A claimant satisfies this burden by producing medical evidence establishing a link between the new condition and the prior compensable injury in terms of reasonable medical probability. Grantham v. R.G. Barry Corp.,217 N.C. App. 529, 491 S.E.2d 678 (1997), disc. review denied,347 N.C. 671, 500 S.E.2d 86 (1998).
3. In the instant case, plaintiff has shown by the greater weight of the evidence that she has undergone a significant change of condition which has impacted her earning capacity. She has presented medical evidence that establishes a causal link between her current chronic pain, psychological deterioration and her compensable injury, and that as a result of her current condition, she is unable to earn wages in any employment. Accordingly, plaintiff is entitled to compensation under the Act for a substantial change of condition. N.C. Gen. Stat. § 97-47.
4. Plaintiff has not reached maximum medical improvement from her change of condition. Therefore, plaintiff is entitled to temporary total disability compensation at the rate of $466.00 per week from 12 August 1997 to the present and continuing until further orders of the Commission. N.C. Gen. Stat. § 97-47.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorneys fee hereinafter approved, defendant shall pay temporary total disability compensation to plaintiff at the rate of $466.00 per week from 12 August 1997 to the present and continuing until further order of the Commission. As much of said compensation as has accrued shall be paid to plaintiff in a lump sum.
2. A reasonable attorney's fee of 25% of the compensation awarded in Paragraph 1 above is approved for plaintiff's counsel. Said fee shall be deducted from the accrued amount due plaintiff and defendant shall pay it directly to plaintiff's counsel; thereafter, every fourth check shall be paid to plaintiff's counsel.
3. Defendant shall pay medical expenses incurred or to be incurred in the future which are reasonably related to plaintiff's compensable injuries when bills for the same are approved through procedures adopted by the Commission.
4. Defendant shall pay the costs.
This the ___ day of October, 2001.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER