***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Commissioner Young. The appealing party has shown good grounds to reconsider the evidence and amend the Opinion and Award; therefore, the Full Commission MODIFIES and AFFIRMS the Opinion and Award of Deputy Commissioner Stephenson.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in an executed Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
In the Pre-Trial Agreement, defendant-employer Danka Holdings and employee/plaintiff entered into the following stipulations which were received into evidence as Stipulated Exhibit 1A:
1. Plaintiff's alleged date of injury is April 26, 2000.
2. On that date, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. On that date, an employer/employee relationship existed between plaintiff and defendant-employer Danka Holdings (thereafter referred to as Danka).
4. Zurich was the compensation carrier at risk.
5. Judicial Notice may be taken of all Industrial Commission forms on file.
6. Plaintiff's average weekly wage of April 26, 2000 is to be determined.
7. Plaintiff was employed by Danka from February 16, 1998 through November 15, 2000 but was on medical leave of absence from May 17, 2000 to November 15, 2000.
In the Pre-Trial Agreement, defendant-employer UNC-CH and plaintiff-employee entered into the following stipulations admitted into Stipulated Exhibit # 1B:
1. Plaintiff's alleged dates of injury are October 10, 1996 and change of condition since.
2. On October 10, 1996 the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. On October 10, 1996 an employee/employer relationship existed between UNC-CH and plaintiff.
4. UNC-CH is self-insured with Key Risk Management Services as the third-party administrator.
5. Judicial Notice is taken of all the Industrial Commission forms on file.
6. Plaintiff's average weekly wage is to be determined. Plaintiff's W-2 was received into evidence as Stipulated Exhibit # 2. Form 22 was received into evidence as Stipulated Exhibit # 3. Payroll records were received into evidence as Stipulated Exhibit # 4. Plaintiff average weekly wage from UNC-CH yields a compensation rate of $351.03 as set forth in a Form 26 from December 1997.
7. Plaintiff's average weekly wage from Danka is to be determined from Stipulated Exhibit Numbers 2, 3, and 4.
8. Judicial Notice was taken of Industrial Commission forms on file, and defendant-UNC-CH agreed to provide and stipulated a Form 28B from May 2000.
9. The depositions of Dr. James Dallis, Dr. George Edwards, Dr. Kerry Jacobson, Dr. Joel Krakauer, and Dr. Scott Sanitate, are a part of the evidentiary record in this case.
 ***********
Based upon the evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was fifty-two (52) years old at the time of the deputy commissioner hearing in this matter. Plaintiff's education includes a high school diploma in 1967, a college degree from Mary Baldwin in 1971, and a Masters in Education degree from the University of Virginia in 1973.
2. Before plaintiff began work with defendant-UNC-CH, plaintiff had taught visually impaired students and worked at the Wake Medical Center Area Health Education Center and Burroughs Wellcome Company.
3. In August 1995, plaintiff began employment as secretary to the Chairman of the Pediatrics Department at UNC-CH, hereinafter "UNC". Plaintiff's job duties included extensive keyboarding and typing, opening up mail, filing, and answering the telephone. Plaintiff had no significant problems with her hands, wrists, or arms prior to her employment with UNC.
4. On October 10, 1996, plaintiff filed a claim for bilateral carpal tunnel syndrome as a result of her employment. UNC accepted plaintiff's claim as compensable and paid temporary total disability and permanent partial disability benefits and provided medical treatment with numerous physicians.
5. Plaintiff has filed a claim for change of condition pursuant to N.C. Gen. Stat. § 97-47 against UNC which was denied.
6. Plaintiff has also filed a claim against Danka for an alleged injury by accident or occupational disease on April 26, 2000. Danka also denied plaintiff's claim via Form 61 filed on June 27, 2000.
7. Plaintiff sought treatment for upper extremity conditions and then ultimately began treating with Dr. Joel Krakauer on March 20, 1997. At that time, plaintiff presented with complaints of pain in both arms and hands dating back to August of 1996. Dr. Krakauer diagnosed plaintiff with tendonitis and lateral epicondylitis. On October 15, 1997, Dr. Krakauer determined plaintiff had reached maximum medical improvement and assigned an 8% permanent partial disability rating to each upper extremity. UNC paid these ratings and continued paying for plaintiff's medical treatment for her compensable carpal tunnel syndrome through 2000.
8. Plaintiff left employment with UNC on March 21, 1997 and sought employment, which involved less use of her hands, wrists, and arms. Plaintiff began working with Ikon, selling copiers. Plaintiff continued to treat with Dr. Krakauer and Dr. Sanitate while working with Ikon. Although plaintiff's job at Ikon involved some driving which bothered plaintiff's upper extremities, the greater weight of the evidence indicates that plaintiff's employment with Ikon did not significantly aggravate her baseline pain level.
9. On February 16, 1998, plaintiff began working with defendant-employer Danka. Plaintiff's job duties with Danka involved selling copiers and office equipment. Far different from her position at UNC, paperwork and keyboarding were not the largest part of plaintiff's job at Danka. Instead, the biggest part of plaintiff's job was to get out and make contacts in order to sell copiers and fax machines. This position also required plaintiff to prepare proposals and drive to meetings; however, plaintiff drove less than one hour per day.
10. Plaintiff saw Dr. Krakauer on one occasion while working with Danka, October 30, 1998. Plaintiff gave Dr. Krakauer no indication at that time that her employment with Danka was causing any of her upper extremity problems.
11. Plaintiff was subsequently referred to Dr. Scott Sanitate, physiatrist. Dr. Sanitate first saw plaintiff on July 13, 1999 and diagnosed her with upper extremity pain even though he could not find an explanation for her condition. Plaintiff made no complaints to Dr. Sanitate at this visit that her job at Danka was causing her any problems. Dr. Sanitate continued to treat plaintiff for temporary flare-ups of her underlying extremity condition, all of which occurred as a result of activities away from work.
12. Danka issued laptops to its salesmen in April 2000. Plaintiff alleges that on April 26, 2000, she was on the phone with her supervisor, Mr. Cupstid, attempting to get a funnel forecast to work when she experienced pain in her hands and arms.
13. Following the April 26, 2000 incident, plaintiff saw Dr. James Dallis on May 16, 2000 and reported a history of chronic elbow pain. Plaintiff then went on medical leave from Danka from May 17, 2000 through November 15, 2000 and has not returned to work since that time.
14. Plaintiff saw Dr. George Edwards, Jr. on September 5, 2001. Dr. Edwards performed a thorough exam of plaintiff and determined that she had bilateral forearm pain with a previous history of tendonitis with no objective evidence of pathology at the time of this evaluation.
15. Plaintiff testified at the deputy commissioner hearing that the April 26, 2000 incident was the initiating event for her upper extremity problems and her resulting inability to work. Plaintiff further testified that without this event, she would have been able to continue working with Danka. Plaintiff, however, has provided no evidence in support of this position. Conversely, the evidence establishes that plaintiff was performing her normal job on April 26, 2000. Specifically, plaintiff was using a computer to prepare a funnel forecast report which she had prepared numerous times in the past. There is no medical testimony that this event caused or aggravated plaintiff's upper extremity condition and any of her disability. Likewise, no medical records make reference to any injury or trauma occurring at work on April 26, 2000. The Full Commission finds that plaintiff was doing part of her regular job on April 26, 2000 and there is no medical evidence to establish causation and a resulting compensable injury by accident.
16. Plaintiff's position at Danka was not a repetitive position which would lead to the development of a compensable upper extremity condition or significantly aggravate her underlying condition. Plaintiff's salesperson duties with Danka did not require nearly as much keyboarding as the UNC secretarial position. Plaintiff spent less than one hour per day keyboarding, and from April 1, 2000 through April 26, 2000, plaintiff spent little or no time on the laptop. Plaintiff worked on a computer in the office during that time, but on some days, she performed no keyboarding at all. Although plaintiff was required to prepare a funnel forecast report as part of her job with Danka, she only submitted the report one to two times per month The total keyboard time for plaintiff to prepare the funnel forecast report would be less than fifteen minutes per month. Moreover, the evidence further establishes that plaintiff did not consistently submit these reports and her supervisor prepared reports on plaintiff's behalf at times. Plaintiff also prepared daily call sheets; however, there were a number of days when plaintiff did not have to file this report. Plaintiff traveled approximately seventy miles per day, or slightly over one hour, to meet with customers. Plaintiff's daily driving did not change appreciably over the course of her employment with Danka.
17. Dr. Scott Sanitate, expert in the field of physical medicine and rehabilitation, first saw plaintiff on July 13, 1999. Dr. Sanitate diagnosed plaintiff with upper extremity pain that she reported to have existed on a chronic basis. Dr. Sanitate could not find a medical explanation for plaintiff's condition at that time, and he did not diagnose plaintiff with tendonitis or lateral epicondylitis or carpal tunnel syndrome on July 13, 1999 or anytime thereafter.
18. Plaintiff saw Dr. Sanitate on thirteen occasions between July 13, 1999 and May 12, 2000. Even though plaintiff complained of numerous non-work activities that caused aggravations of her symptoms and pain increase, she never made any reference to her employment at Danka as causing, contributing to, or significantly aggravating any of her upper extremity problems. Moreover, Dr. Sanitate described these flare-ups as temporary in nature, and he opined that plaintiff's position with Danka did not cause, significantly contribute to, or significantly aggravate her upper extremity condition. The Full Commission adopts Dr. Sanitate's opinion in this regard.
19. Dr. Krakauer's testimony also establishes that plaintiff's employment with Danka did not significantly aggravate or permanently worsen her underlying upper extremity condition. In fact, Dr. Krakauer was unable to state whether plaintiff was worse off subsequent to her employment with Danka than she was prior to it. According to Dr. Krakauer, plaintiff had pain throughout his treatment of her and had symptoms that were the result of normal life activity or for no reason. The only time plaintiff visited Dr. Krakauer while working for Danka was on October 30, 1998. Plaintiff gave Dr. Krakauer no indication at that visit that her employment with Danka was causing any of her upper extremity problems.
20. Dr. Edwards, board certified in orthopedic and hand surgery, regularly treats patients with upper extremity conditions. Plaintiff was thoroughly examined by Dr. Edwards on September 5, 2001. Dr. Edwards found no objective evidence of tendinitis and no atrophy or tenderness of the extensor musculature over the lateral epicondyles. Dr. Edwards testified he saw no evidence to substantiate a diagnosis of tendinitis in either upper extremity. Dr. Edwards further testified that plaintiff's employment at Danka did not place her at an increased risk compared to the general public of developing of developing tendonitis in her upper extremity and that her employment at Danka did not significantly contribute to or cause her tendonitis. The Full Commission adopts Dr. Edwards' opinion in this regard.
21. The Full Commission gives little weight to the opinion of Dr. Dallis in this case. Dr. Dallis did not examine plaintiff until after she left her employment with Danka. Furthermore, Dr. Dallis did not review any of plaintiff's medical records from her prior treating physicians when he examined her on May 16, 2000 and relied on an inaccurate description of the amount of keyboarding performed by plaintiff while working at Danka.
22. Based upon the greater weight of the evidence, the Full Commission finds that plaintiff did not develop a compensable occupational disease as a result of her employment with Danka. Likewise, the Full Commission finds based upon the greater weight of the evidence that plaintiff's employment with Danka did not cause, contribute to, or significantly aggravate her underlying upper extremity condition.
23. Prior to April 26, 2000, plaintiff was able to perform her job and earn wages despite lingering problems that had never fully resolved due to her job duties at UNC. After April 26, 2000, plaintiff's condition became markedly worse. Plaintiff was unable to continue her work with Danka and has been unable to maintain any employment earning the same or greater wages since. All of plaintiff's treating physicians testified plaintiff suffered a significant aggravation of her pre-existing condition which originally developed at UNC; however, none of plaintiff's treating physicians, except Dr. Dallis, opined that plaintiff's work duties in her position at Danka aggravated or significantly contributed to her underlying upper extremity condition. Therefore, the Full Commission finds that plaintiff underwent a compensable change of condition of her upper extremity condition incurred while employed at UNC that is unrelated to her employment with Danka.
24. Plaintiff is not at maximum medical improvement and is in need of additional treatment. The treatment rendered by Dr. Krakauer, Dr. Sanitate, Dr. Dallis and Dr. Jacobson has been reasonable and necessary to effect a cure, give relief, or lesson plaintiff's period of disability.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff did not suffer an injury by accident in the course of her employment with Danka on April 26, 2000. N.C. Gen. Stat. §97-2(6).
2. Plaintiff did not develop a compensable occupational disease as a result of her employment with Danka. N.C. Gen. Stat. § 97-53(13).
3. Under N.C. Gen. Stat. § 97-47, a "change of condition" refers to `a substantial change, after a final award of compensation, of physical capacity to earn and, in some cases, of earnings.'" The change in earning capacity must be due to a condition different from those existing when the award was made. East v. Baby Diaper Services, Inc., 119 N.C. App. 147,151, 457 S.E.2d 737, 740 (1995) (quoting Pratt v. Upholstery Co.,252 N.C. 716, 722, 115 S.E.2d 27, 34 (1960)). Plaintiff received a final award of compensation from UNC in the form of payment for her 8% permanent partial disability rating to both upper extremities approved by the Industrial Commission on December 12, 1997. Plaintiff has suffered an aggravation of her pre-existing upper extremity condition which originally developed while she was employed at UNC that was not caused, contributed to, or significantly aggravated by her job duties at Danka. N.C. Gen. Stat. § 97-47.
4. A "change of condition" can consist of either a change in the claimant's physical condition that impacts his earning capacity, a change in the claimant's earning capacity even though claimant's physical condition remains unchanged, or a change in the degree of disability even though claimant's physical condition remains unchanged. Blair v. AmericanTelevision Communications Corp., 124 N.C. App. 420, 423, 477 S.E.2d 190,192 (1996). Plaintiff's bilateral arm pain greatly increased between the time plaintiff received her final award of compensation for injury occurred while employed at UNC and April 26, 2000. The deterioration of plaintiff's physical condition has rendered her unable to earn the same or greater wages that she had been earning prior to her compensable injury while employed at UNC; thus, UNC is liable for continued payment of plaintiff's ongoing workers' compensation benefits.
5. Plaintiff is entitled to temporary total disability at her compensation rate of $351.03 per week and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29.
6. Plaintiff is entitled to medical treatment as a result of her compensable upper extremity condition for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25.
7. Plaintiff's counsel is entitled to a reasonable attorney's fee of twenty-five percent (25%) of the compensation herein awarded to plaintiff.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission MODIFIES and AFFIRMS the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to an attorney's fee herein, defendant-UNC shall pay to plaintiff temporary total disability benefits at a compensation rate of $388.35 per week from May 10, 2000 and continuing until further Order of the Commission. This amount has accrued and shall be payable in a lump sum subject to the attorney's fee approved below.
2. Defendant-UNC shall pay all medical expenses incurred by plaintiff as a result of her compensable upper extremity condition.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the lump sum compensation awarded plaintiff in Paragraph 1 of this AWARD is hereby approved to be deducted from sums due plaintiff and paid directly to plaintiff's counsel. Thereafter, every fourth check shall be payable directly to plaintiff's counsel.
4. Defendant-UNC shall pay the costs due the Commission
This the ___ day of September 2003.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING IN THE RESULT:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER